IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARCUS PEREZ,**    *Plaintiff,*  v.  **JEROME J. TERESINSKI, ESQUIRE,**    *Defendant.* | Case No. 2:21-cv-05020-JDW |

## MEMORANDUM

Lawyers advocate for their clients. Sometimes that happens in a courtroom. But other times, it happens outside the courtroom, either with an eye towards improving the client's position in court or avoiding court altogether. In 1994, Assistant District Attorney Joseph Teresinski was representing his client, the Commonwealth of Pennsylvania, in response to Marcus Perez's petition for postconviction relief. Mr. Teresinski thought an error in a transcript was causing problems for his case, so he contacted the court reporter to find out whether a transcription error had occurred. The reporter determined there was an error and corrected the transcript. The trial judge has confirmed that an error occurred. Now, having been paroled, Mr. Perez has sued Mr. Teresinski, claiming that his contact with the court reporter violated Mr. Perez's constitutional rights. But Mr. Teresinski is immune from suit under the doctrines of absolute prosecutorial immunity and qualified immunity. The Court will therefore grant his motion to dismiss this case.

I. **BACKGROUND**

    A. **Mr. Perez's Guilty Plea**

In 1989, Marcus Perez shot and killed Carnell Cosby. On July 11, 1990, he pled guilty to murder generally in the Court of Common Pleas for Philadelphia. That plea hearing included a lengthy colloquy with Judge Theodore A. McKee about the maximum possible sentence that Mr. Perez could receive. For example, Judge McKee explained that if the Commonwealth secured a conviction on a firearm charge, Mr. Perez could receive two-and-a-half to five years in prison which "could be in addition to any sentenced you would receive on the other charges, including in addition to life …." (ECF No. 8-6 at 5.) Judge McKee then explained to Mr. Perez, "So, the most you could receive could be life imprisonment for murder." (*Id.*) After noting the possibility that a jury could impose the death penalty, he explained that if the jury did not impose a capital sentence, then "you could receive a sentence of life imprisonment, plus five to 10 for conspiracy, plus ten to 20 for the robbery, plus two and a half to five for the firearms' violation, whatever that adds up to." (*Id.* at 5-6.) He then summarized, "Life **implies** 17 ½ to 35 years. I'm not saying you would receive that, but I'm saying that is the most you could receive if you were to go to trial." (*Id.* at 6 (emphasis added).) Judge McKee then confirmed Mr. Perez's understanding of that possible sentence.

Judge McKee conducted a degree-of-guilt hearing on September 18, 1990. He found Mr. Perez guilty of first-degree murder, conspiracy, robbery, and a firearms

violation. Based on a change made to Pennsylvania law in 1988, this verdict required a life sentence without the possibility of parole, and that's what Judge McKee imposed. After his sentencing, Mr. Perez filed a series of post-verdict motions in which he stated he did not understand the implications of his guilty plea. In those motions, he asked the court to reduce his conviction to third degree murder, a crime that has a sentence allowing for the possibility of parole. The court denied those motions, and his conviction became final on April 16, 1993.

**B.      Mr. Perez's PCRA Petitions**

On May 14, 1993, Mr. Perez sought relief from his conviction pursuant to Pennsylvania's Post Conviction Relief Act. In his petition, he claimed that because Judge McKee said that life implied a sentence 17 ½ to 35 years, Mr. Perez thought he would be eligible for parole if he pled guilty. When Mr. Perez filed this first motion for relief under the PCRA, Mr. Teresinski was a member of the Motions Unit in the Philadelphia District Attorney's Office, and he worked on the response to Mr. Perez's petition. Mr. Teresinski suspected that the transcript's attribution to Judge McKee of the word "implies" was in error, both because it was contrary to the law and because it did not make sense in the context of the colloquy, in which Judge McKee repeatedly explained that Mr. Perez faced life for murder plus additional sentences for other charges.

Given his suspicion, Mr. Teresinski contacted the court reporter who transcribed the guilty plea hearing, Kenneth Brown. Mr. Brown told Mr. Teresinski that the transcript

was incorrect. Mr. Brown explained that he took notes of the proceeding, a different person working as a "note reader" prepared the transcript, and the note reader "inadvertently substituted the word 'implies' for the word "plus." (ECF No. 8-3 at 2, ¶ 3.) After receiving the corrected transcription, the PCRA court denied Mr. Perez's petition for relief. The PCRA court concluded, "[t]his attempt to benefit from a transcription error will not be allowed." (ECF No. 8-1 at 9.)

Mr. Perez filed six more unsuccessful PCRA petitions between April 1997 and February 2016. He sought clarification from Judge McKee about what Judge McKee said during the guilty plea colloquy. On February 9, 2006, Judge McKee responded to Mr. Perez's counsel and confirmed that he said, "life *plus* 17 to 35 years," **not** "life *implies* 17 ½ to 35 years," but he also noted that he made at least one incorrect statement of law elsewhere in the colloquy. (ECF No. 15-2 at 40 (emphasis added).)

On December 10, 2019, Mr. Perez filed his eighth PCRA petition. This petition included a note that Mr. Teresinski wrote prior to contacting Mr. Brown, a note that was only made available to Mr. Perez due to a change in the policies of the Office of the Philadelphia District Attorney. The handwritten note stated Mr. Teresinski "need[ed]" to obtain a "new and improved version" of the transcript from Mr. Brown. Upon consideration of this note, a reading of the initial transcript, the transcript from the sentencing hearing, Judge McKee's admissions that he "likely … misinformed Perez," and a declaration by Mr. Perez's plea counsel that he inadvertently misled Perez into

4

believing that he would eventually become eligible for parole, the Commonwealth concluded Mr. Perez entered an "unknowing, unintelligent, and involuntary guilty plea." (ECF No. 15-2 at 18-20.) Accordingly, the Commonwealth agreed that Mr. Perez was entitled to post-conviction relief as a result of ineffective assistance of plea counsel. The Commonwealth also stated that it did not believe any "fraud" took place with respect to the change of the transcript. (ECF No. 15-2 at 14.)

On January 7, 2021, Judge Glenn B. Bronson of the Philadelphia Court of Common Pleas granted Mr. Perez post-conviction relief. That same day, Mr. Perez pleaded guilty to charges of robbery and murder in the third degree, and he was immediately eligible for parole. On June 17, 2021, he was paroled.

### C.  Procedural History

Mr. Perez filed this lawsuit in November of 2021. In his Complaint, Mr. Perez asserts claims against Mr. Teresinski under 42 U.S.C. § 1983. He claims that Mr. Teresinski violated his rights to due process and a jury trial under the Fifth, Sixth, and Fourteenth Amendments. On February 25, 2022, Mr. Teresinski moved to dismiss, arguing that he was immune to a civil suit for damages under § 1983. The motion is ripe.

## II.  LEGAL STANDARD

A district court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "[r]ules demand only a short and plain statement of the claim showing

5

that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Under that standard, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *See id.*

In making its determination, the court must "draw on its judicial experience and common sense." *Id*. First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id*. Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id*. The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id*. at 790.

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citations omitted). In addition, if the exhibits to a complaint "contradict [the]

allegations in the complaint, the exhibits control." *Vorcheimer v. Philadelphia Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

## III. DISCUSSION

Mr. Teresinski contends that he has absolute immunity from suit under the doctrine of prosecutorial immunity and immunity under the doctrine of qualified immunity. The Court concludes that both doctrines apply and protect him from suit.

### A. Absolute Immunity

State prosecutors are immune from suits for civil damages under Section 1983 for their work in presenting the state's case. *See Imbler v. Pachtman*, 424 U.S. 409, 425 (1976). In the Third Circuit, "absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings where the prosecutor is personally involved and continues his roles as an advocate." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). The absolute immunity determination relies on "the nature of the function performed, not the identity of the actor who performed it." *Light v. Haws*, 472 F.3d 74, 78 (3d Cir. 2007).

In light of the Supreme Court's "quite sparing" recognition of absolute immunity to § 1983 liability, the Court begins with the presumption that qualified immunity, rather than absolute immunity, is appropriate. *Odd v. Malone*, 538 F.3d 202, 207–08 (3d Cir. 2008). To overcome this presumption, a prosecutor must show that he was functioning as the state's advocate when performing the actions in question. *See id.* The

7

"preparation necessary to present a case" and the "obtaining, reviewing, and evaluation of evidence" are prosecutorial acts that fall within the scope of prosecutorial immunity. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).

When Mr. Teresinski contacted Mr. Brown about the transcript, he was acting in his capacity as an advocate for the Commonwealth. He reviewed the transcript on which Mr. Perez relied in his PCRA petition and suspected it was incorrect. So he contacted Mr. Brown to ensure the Commonwealth had or could obtain an accurate transcript, which would permit the Commonwealth to rebut Mr. Perez's PCRA petition. After Mr. Brown confirmed Mr. Teresinski's suspicions of inaccuracies, Mr. Teresinski informed the Court that the corrected transcript supported the Commonwealth's position. At each step, Mr. Teresinski was engaged in preparation necessary to present the Commonwealth's case.

Mr. Perez contends that Mr. Teresinski "effectively assumed the role of the court reporter himself ...." (ECF No. 15-1 at 4.) But the exhibits before the Court, all of which the Court may consider on a motion to dismiss because they are public records and because Mr. Perez relies on them in his Complaint, establish only that Mr. Teresinski contacted Mr. Brown and Mr. Brown decided to correct the transcript. Nothing suggests that Mr. Teresinski compelled Mr. Brown to make that change or that Mr. Teresinski had the power to compel that change.

Because Mr. Teresinski did not change the transcript himself, Mr. Perez's argument that the "transcription of a court record is by definition devoid of discretion"

does not matter. (*Id.*) Mr. Teresinski did not engage in the ministerial task of changing the transcript. He acted as an advocate in suggesting that the transcript was wrong, and he persuaded Mr. Brown to correct the transcript.

**B.       Qualified Immunity**

"Prosecutors who are not entitled to absolute immunity from a plaintiff's claims may nonetheless be entitled to qualified immunity from those same claims." *Yarris*, 465 F.3d at 139. Qualified immunity shields a state officer from a suit for monetary damages under § 1983 unless "the official violated a … constitutional right" and "the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (cleaned up). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that [s]he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). A court need not identify a case directly on point for a right to be clearly established, but "existing precedent must have placed the … constitutional question beyond debate." *White v. Pauly*, 137 S. CT. 448, 551 (2017).

The doctrine of qualified immunity protects government officials from "liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Fogle*, 957 F.3d at 158 (quoting *Buckley*, 509 U.S. at 268). As the defense

provides "immunity from suit rather than a mere defense to liability," a claim of qualified immunity must be resolved "at the earliest possible stage of the litigation." *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (quoting *Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir. 2008)). Accordingly, a court must ask: (1) "whether the plaintiff sufficiently alleged the violation of a constitutional right[;]" and (2) "whether the right was 'clearly established' at the time of the official's conduct." *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021) (internal citation omitted). Courts must define the constitutional rights with specificity, not at a "high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (quote omitted).

    Mr. Perez's complaint focuses on Mr. Teresinski's communication with Mr. Brown to obtain a corrected transcript. He does not point to any case that establishes that a prosecutor could not engage in conduct like what Mr. Teresinski did, even if he did so in bad faith. Nor has the Court found any. It does not appear that any case decided prior to 1995 (or since) holds that prosecutors violate due process rights when they ask stenographers to change a transcript. To the contrary, when Mr. Teresinski contacted Mr. Brown, the Third Circuit had held that prosecutors had prosecutorial immunity even if they solicited and used false evidence in connection with a prosecution. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1467 (3d Cir. 1992). That holding would have led a reasonable prosecutor to think that he had leeway to solicit a change to a transcript that he suspected was wrong. Mr. Teresinski is therefore entitled to qualified immunity.

Mr. Perez's arguments do not change that conclusion. He suggests that his "rights to due process and a jury trial" have "long been clearly established." (ECF No. 15-1 at 6.) Mr. Perez could not define his rights at a higher level of generality, and his approach is at odds with the Supreme Court's directive about how to define the right at issue. When the Court defines the right with more specificity, as it must do, the notion that it is clearly established drops away.

In addition, without pointing to any cases, Mr. Perez argues that it is "frankly incomprehensible that an assistant district attorney would not realize that an undisclosed alteration of a transcript … would comprise a due process violation." (*Id.* at 7.) There are several problems with that argument. First, there was no "undisclosed" alteration of a transcript. Mr. Perez attached to his PCRA petition a letter from Mr. Teresinski to Mr. Brown dated February 8, 1994, disclosing the communication between Mr. Teresinski and Mr. Brown about the transcript, and the changes that resulted. (*See* ECF No. 8-6.) And Mr. Perez knew that Mr. Brown had changed the transcript. The recent disclosure of a note in which Mr. Teresinski discussed his reason for contacting Mr. Brown does not change the fact that their communication has been public record for three decades. In any event, whether Mr. Teresinski disclosed his communication with Mr. Brown to Mr. Perez does not bear on the question of whether the law in 1994 clearly established that Mr. Teresinski could contact the court reporter to suggest changes to the transcript. It did not, so qualified immunity applies.

## IV. CONCLUSION

Mr. Teresinski acted as an advocate when he contacted Mr. Brown, and no case suggested it was improper for him to do so at the time. He is therefore entitled to absolute and qualified immunity. The Court will grant his motion and dismiss the claims against him. Because nothing Mr. Perez could allege would change this outcome, the Court's dismissal will be with prejudice.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 22, 2022